**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| PUERTO RICO ENERGY, LLC,<br>*Plaintiff*,<br><br>v.<br><br>COMMONWEALTH OF PUERTO RICO *et al.*,<br>*Defendants.* | Case No. 3:20-cv-01591-ADC |
| TOTALENERGIES MARKETING<br>PUERTO RICO CORP.,<br>*Plaintiff*,<br><br>v.<br><br>COMMONWEALTH OF PUERTO RICO *et al.*,<br>*Defendants.* | Case No. 3:20-cv-01725-ADC<br><br>Consolidated with<br><br>Case No. 3:20-cv-01591-ADC |

<u>**TOTALENERGIES MARKETING PUERTO RICO CORP.'S**</u>
<u>**OPPOSITION TO THE COMMONWEALTH OF PUERTO RICO'S**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

COMES NOW Plaintiff TotalEnergies Marketing Puerto Rico Corp. ("TEMPR"), through its undersigned attorneys, and respectfully submits this opposition to the Commonwealth of Puerto Rico's ("Commonwealth") motion for summary judgment (ECF No. 206).

## INTRODUCTION

TEMPR filed this action to defend the adequate flexibility to respond to changing market conditions and consumer preferences afforded to it by the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801-2807 ("PMPA"). Congress enacted the PMPA to provide franchisors like TEMPR with this flexibility. It did so by setting minimum federal standards governing the termination and nonrenewal of franchise relationships for the sale of motor fuel. This important federal policy goal of the PMPA is undisputed. See Desfosses v. Wallace Energy, Inc., 836 F.2d 22, 25 (1st Cir. 1987) ("Congress was also aware of the franchisors' need for adequate flexibility to respond to changing market conditions and consumer preferences.").

Notwithstanding, the express purpose and effect of the Commonwealth's Act No. 60 of June 27, 2020 ("Act 60") is to impinge on TEMPR's federally protected flexibility to respond to changing market conditions across its network of leased marketing premises. TEMPR exercises its PMPA rights by terminating or not renewing franchise relationships based on events that make such action permissible under the PMPA; namely, due to material violations or failures to agree to changes to the franchises by dealers operating its network of leased marketing premises. TEMPR's network of dealers operate TEMPR-branded gasoline service stations, which include the integrated sale of fuel and non-fuel products through TEMPR-branded convenience stores.

Act 60 expressly added integrated franchisor-branded convenience stores to the Commonwealth-law definition of a franchisor-branded gasoline service station. It also created a

cause of action for otherwise federally valid terminations or nonrenewal of a franchise relationship, predicated on events related to integrated franchisor-branded convenience store franchises.

The crux of the Commonwealth's legal argument is that franchisor-branded convenience store franchises, regardless of whether they are integrated to a PMPA covered franchise for the sale of motor fuel, are not covered by the PMPA. It holds that franchisors like TEMPR may never exercise PMPA rights as to a franchise relationship based on events relating to an integrated franchisor-branded convenience store.

This argument finds no real support in existing case law or statute. In fact, the very opposite is true. Case law and the PMPA's history support the contention that secondary agreements may be integrated to a franchise of motor fuel covered by the PMPA. As a result, franchisors may not use these secondary agreements as subterfuge to terminate or fail to renew a franchise relationship without regards to the PMPA. But in compliance with the PMPA, franchisors may terminate or fail to renew a franchise relationship based on events related to integrated secondary agreements. As demonstrated herein, the Commonwealth rejects this well-established framework. For this and other reasons, its Motion for Summary Judgment filed as Doc. No. 206 ("Commonwealth's MSJ") should be denied and judgment should be issue in favor of TEMPR's preemption charges.

## ARGUMENT

The Commonwealth's MSJ should be denied because it fails to establish that there is no genuine dispute as to any material fact or that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); see also Sands v. Ridefilm Corp., 212 F.3d 657, 660 (1st Cir. 2000). On the facts, the Commonwealth wholly failed to demonstrate that TEMPR's branded convenience stores are not integrated at each of its TEMPR branded leased marketing premises. The fact that TEMP's convenience store franchises are part of the franchise relationship that is covered by the PMPA is

material and should favor TEMPR. On the law, the Commonwealth's arguments completely miss a long line of PMPA case law and the PMPA's history that acknowledge that an integrated convenience store franchise can be part of the franchise relationship that is covered by the PMPA. Its self-serving self-contradiction should be rejected by this Court.

### A. The Commonwealth's MSJ failed to demonstrate that TEMPR's branded convenience stores are not integrated into the franchise relationship that is covered by the PMPA.

Since 2009, courts sitting in this District have validated that TEMPR's branded convenience stores are not integrated to the franchise relationship that is covered by the PMPA. In Santiago-Sepúlveda v. Esso Standard Oil Co., 638 F. Supp. 2d 193, 203-04 (D.P.R. 2009), aff'd, 643 F.3d 1 (1st Cir. 2011), this Court held that "the Bonjour Franchise Contract is part of the franchise relationship that is covered by the PMPA." As indicated, this ruling was affirmed by the First Circuit and stands for the proposition that the PMPA governs TEMPR's network of leased marketing premises that include integrated TEMPR-branded convenience store franchises. Nevertheless, the Commonwealth's MSJ is devoid of evidence demonstrating that the factual conclusion in Santiago-Sepúlveda is no longer the case. In other words, the Commonwealth failed to proffer any evidence showing that, as a matter of fact, TEMPR's branded convenience stores are not integrated to the franchise relationship that is covered by the PMPA. Or, in other words, that TEMPR does not operate a network of leased marketing premises that include integrated TEMPR-branded convenience store franchises, as TEMPR has done since Santiago-Sepúlveda.

Santiago-Sepúlveda is not the sole decision from this District Court validating the idea that TEMPR-branded fuel and non-fuel offerings are integrated. For example, in Total Petroleum P.R. Corp. v. Villa Caparra Esso Sev. Ctr., No. 16-2436 (PAD/BJM), 2018 WL 6132540, at *4 (D.P.R. Oct. 30, 2018), the District Court held that "[t]he Franchise Agreement governs the operation of the convenience store on the property under the "BONJOUR RAPIDE" brand and system. Under

the Franchise Agreement, Defendants agreed to pay Total the greater of $1,300 or six percent of the convenience store's gross sales as a monthly franchise fee. Defendants' failure to comply with the agreement triggers Total's right to demand compliance **and suspend product deliveries**, and Defendants are obliged to pay any sums owed to Total **should the franchise relationship be terminated**." (Emphasis added) (cleaned up). Despite having been an unopposed motion for summary judgment, the District Court implied that, as a matter of law, a convenience store franchise may be integrated to a motor fuel franchise. Otherwise, it would not have concluded, as it expressly did, that failure to pay a royalty under the convenience store franchise triggered TEMPR's right to suspend product deliveries and terminate the franchise relationship.

TEMPR has submitted facts and supporting evidence to further show that it continues to do business in the same manner as it did in <u>Santiago-Sepúlveda</u>. For example, TEMPR's franchise agreements demonstrate that its fuel and non-fuel operations are inextricably intertwined components of a unified business model that goes far beyond simply authorizing the sale of TOTAL-branded motor fuel. Doc. No. 236-2 at ¶¶ 15, 113, 116, 144, 151, 161. These contracts establish a comprehensive and highly integrated franchise structure in which every aspect of the service station's operations—including the convenience store and related retail offerings—is subject to rigorous brand standards and controls that define the TOTAL customer experience <u>Id.</u> at ¶¶ 9, 127, 133, 136-137, 149, 194, 196. This unified approach enables TEMPR to maintain a consistent brand identity and respond to evolving consumer demands across its service station network's full range of offerings <u>Id.</u> at ¶¶ 112, 205. By rigorously controlling the customer experience from the pump to the cash register, TEMPR seeks to build brand loyalty and drive traffic to its gas stations <u>Id.</u> at ¶¶ 9, 12, 44, 164, 214, 223, 233, 247. The goal is to make every TOTAL outlet a trusted destination for consumers' refuelling and on-the-go shopping needs by

providing a reliably positive encounter on each visit through strict enforcement of product selection and quality standards. Id. at ¶ 12.

TEMPR's "branded convenience store – Bonjour – is tied to and operates solely within its branded fuel service stations in Puerto Rico." Doc. No. 236-2 at ¶ 13. "There is no standalone Bonjour convenience store operating independently of a TotalEnergies-branded service station in Puerto Rico." Id. at ¶ 14. "TEMPR's longstanding business model is based on offering franchises that closely integrate fuel sales and non-fuel offerings, such as convenience stores, across its entire service station network in Puerto Rico." Id. at ¶ 16. "TEMPR invests in advertising campaigns across various media channels, including television, radio, billboards, social media, and on-site materials." Id. at ¶ 10. "These campaigns emphasize not only the quality of TotalEnergies motor fuels, but also the attractiveness of Bonjour and La Boutique convenience stores as part of its brand strategy." Id. at ¶ 11. "By promoting its convenience stores and other non-fuel offerings alongside its fuel brands, TEMPR seeks to drive increased traffic to its service stations and encourage customers to view its sites as convenient, one-stop destinations for their refueling and on-the-go shopping needs." Id. at ¶ 12.

The record also supports the conclusion that TEMPR's branded convenience stores are integrated to the franchise relationship that is covered by the PMPA. It is beyond reasonable dispute that the modern gasoline service station requires the operation of an integrated convenience store. This integration of fuel and non-fuel operations reflects the modern realities and consumer preferences in the petroleum marketing industry. The PMPA is precisely designed to protect the flexibility necessary for franchisors like TEMPR to address these changing market conditions. See Chestnut Hill Gulf v. Cumberland Farms, 940 F.2d 744, 747 (1st Cir. 1991), citing S. Rep. No. 731, 95th Cong., 2d Sess. 19, reprinted in 1978 U.S. Code Cong. Admin. News at 877

("Particularly important is that legislation dealing with this subject recognize the importance of providing adequate flexibility so that franchisors may initiate changes in their marketing activities to respond to changing market conditions and consumer preferences.").

Act 60 itself acknowledges the fact that that the modern gasoline service station requires the operation of an integrated convenience store. The Commonwealth's MSJ admits that Act 60 adds convenience stores to the statutory definition of "retail service station." It also admits that Act 60 effectuated this addition to address changing market conditions that did not exist when it enacted the Puerto Rico Gasoline Law in 1978 as Act No. 3 (the "Puerto Rico Gasoline Law"). Doc. No. 206 at 10-11.

Act 60's legislative history also confirms that the gasoline market has changed as a matter of fact and that the modern "retail service station" is not limited to the sale of motor fuel. In its committee report on the law, the Puerto Rico Senate Committee on Banking, Commerce, and Cooperativism extensively cites evidence from the Puerto Rico Gasoline Retailers Association ("PRGRA") to the effect that "at present, a station that sells gasoline is forced to have ancillary services, particularly the convenience stores that have become an essential element for service station operations." Doc. No. 236-2 ¶ 31. The report further credits the PRGRA's observation that "whoever controls the operation of the convenience store at a gasoline station essentially controls the operation of the station." Id. ¶ 32.[1] The Puerto Rico Senate Report supports the same idea that

---

[1] These statements crediting the PRGRA's observations are legislative facts of which this Court may take judicial notice in confirming the central role of convenience stores in the modern gasoline station business model. See Fed. R. Evid. 201(a) Advisory Committee's Note to 1972 Proposed Rule ("Legislative facts . . . are those which have relevance to legal reasoning and the lawmaking process . . . in the formulation of a legal principle or ruling by a judge or court. . . ."); see, e.g., Lamar, Archer & Cofrin, LLP v. Appling, 584 U.S. ___, 138 S. Ct. 1752, 1761 (2018) (considering House report to interpret federal statute); Territory of Alaska v. Am. Can Co., 358 U.S. 224, 226-27 (1959) (taking judicial notice of legislative history of the bill at issue); Anderson v. Holder, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) ("Legislative history is properly a subject of judicial notice"); Me. Ass'n of Retirees v. Bd. of Trs. of the Me. Pub. Emps. Ret. Sys., 954 F. Supp. 2d 38, 40 n.1 (D. Me. 2013) (stating that legislative history "might be considered a matter of judicial notice.").

modern stations are one single integrated business of fuel and non-fuel product offerings and echoes the consensus of experts that it is a financial imperative for the average retailer to operate an integrated convenience store at retail service stations. See Doc. No. 236-2 ¶¶ 34, 65-69, 72-76.

The expert testimony that supports the factual record in this case further confirms the fact that the modern gasoline service station requires the operation of an integrated convenience store. Mr. Jeffrey Bernard, a veteran industry consultant with over five decades of experience, explained that the rise of the convenience store as an indispensable profit center is no coincidence, but a direct response to the intense competitive pressures and razon-thin margins that characterize fuel retailing in Puerto Rico. Doc. No. 236-2 ¶¶ 97-98, 105. The average retailer in Puerto Rico today confronts an intensely competitive marketplace characterized by narrow profit margins on fuel, high operational costs, and an imperative to enhance their non-fuel retail offerings to remain viable, Bernard explains. Doc. No. 236-2 ¶¶ 100, 108.

Expert opinion and analysis performed by Vicente Feliciano, a highly respected economist with extensive experience studying Puerto Rico's gasoline market, underscores this point. Drawing on financial information from a representative sample of service stations, Feliciano finds that the typical outlet on the island derives a staggering 30% of its total revenue and nearly 60% of its net profit margin from convenience store sales. Doc. No. 236-2 ¶¶ 66, 77-78. Feliciano's research also illuminates the symbiotic relationship between fuel and convenience store operations. Rather than functioning as separate and independent businesses, Feliciano explains that gasoline sales and in-store purchases are intricately liked, with each acting as a driver for the other. Doc. No. 236-2 ¶¶ 71-74. Feliciano captures this mutually reinforcing relationship with the concept of "synergy," which he uses to describe the increasing interdependence of fuel and non-fuel sales. Doc. No. 236-2 ¶¶ 71-73. The non-fuel businesses within a service station are not merely complementary or

incidental to the enterprise of gasoline retailing; they are essential to its long-term economic viability in an increasingly challenging marketplace, Feliciano explains. Doc. No. 236-2 ¶ 75. Feliciano opines that removing the convenience store from the equation would likely force many stations to close altogether, as they would be unable to generate sufficient revenue to cover their baseline operating costs. Doc. No. 236-2 ¶ 74, 79.

The upshot of this opinion testimony is that TEMPR's integration of fuel and convenience store operations is an adaptation to changing market conditions and consumer preferences throughout Puerto Rico. Empirical evidence refutes the notion that TEMPR-branded convenience stores are different businesses or separable from its network of TEMPR-branded gas stations.

In summary, the fact that TEMPR's branded convenience stores are integrated to the franchise relationship that is covered by the PMPA is supported by a plethora of factual sources. It is supported by factual determinations in decisions from this District Court, the language of Act 60 and its legislative history, the consensus of expert opinions on the record, and simply from TEMPR's undisputed business practices supported by admissible evidence. As such, the Commonwealth's MSJ should be denied since it relies upon the contention that TEMPR' branded convenience stores are different or separate from its retail service stations, but wholly failed to set forth evidence disputing the long-standing fact that TEMPR' branded convenience stores are integrated to the franchise relationship that is covered by the PMPA.

**B. TEMPR's convenience store franchises can be part of the franchise relationship that is covered by the PMPA.**

The shortcomings of the Commonwealth's MSJ do not end on the factual front. The Commonwealth's legal argument calls for an all-or-nothing finding that franchisor-branded convenience store franchises are never covered by the PMPA. As such, Act 60 is free to thwart TEMPR's existing right to terminate or not renew a TEMPR-branded convenience store franchise

that is integrated to a TEMPR-branded motor fuel franchise. This argument stands in stark contrast to First Circuit precedent and interpretative case law from other circuits and district courts.

The Commonwealth misleadingly asserts that "Act 60's regulation of convenience store agreements is not preempted by the PMPA because the federal statute does not regulate such agreements, nor did Congress intend to occupy that field." Doc. No. 206 at 24. This is a futile attempt to craft Act 60 in the same light as the rent regulation that was upheld in the First Circuit's ruling Esso Standard Oil Co. v. Department of Consumer Affairs, 793 F.2d 431, 433 (1st Cir. 1986). There, the Court of Appeals held that "the rent control regulation enacted by the Commonwealth of Puerto Rico does seek to regulate a substantive element of the franchise agreement." But the First Circuit also indicated that "[a]s DOCA made clear in its brief and at oral argument, any rent proceedings pending before DOCA would be moot once a franchise had been properly terminated under the PMPA, and such proceedings would come to a halt." Id. at 433.

The Commonwealth is not making the same admission, regarding the availability of the PMPA in light of Act 60 effect on integrated convenience store franchises, as counsel for DOCA did in the 1986 First Circuit decision in light of the rent regulation. Quite the opposite, it is rejecting the availability of the PMPA to franchisors like TEMPR, who operate a network of TEMPR-branded retail service stations with integrated convenience store franchises, to terminate or fail to renew a franchise relationship based on events related to the integrated convenience store franchise. By rejecting the availability of the PMPA in this context, which has been upheld repeatedly by this District Court and First Circuit, see, e.g., Santiago-Sepúlveda, supra; Total v. Villa Caparra, supra, the Commonwealth is standing in stark contradiction to the position taken by the Commonwealth in the 1986 First Circuit precedent, and to the legal precedent itself.

TEMPR's argument is that Act 60 may not impinge on its right to terminate or not renew a franchise relationship, in compliance with the PMPA, based on events related to the integrated convenience store franchise. This is the same as the outcome in <u>Esso</u>, where the First Circuit held that the rent regulation did not limit a franchisor's right to terminate or not renew a franchise relationship based on events related to the rent charged for leased marketing premises. The First Circuit held that the rent regulation addressed a substantive aspect of the franchise and was not preempted but did so while validating franchisors rights under the PMPA.

The Commonwealth is not shy to admit that this is not its position here. The Commonwealth's position is that the PMPA is unavailable to franchisors in relation to integrated convenience store franchises, despite Act 60 adding integrated convenience store franchises to be considered part of a "retail service station" under the Puerto Rico Gasoline Law. The Commonwealth's interpretation entails that Act 60 removed the availability of PMPA rights for events based on integrated convenience store franchises. But this is untrue as a matter of law.

There are various cases, many of which are cited by the Commonwealth in its MSJ, that support the proposition that integrated convenience store franchises are part of the franchise relationship. First and foremost, <u>Santiago-Sepúlveda</u> and <u>Total v. Villa Caparra</u> squarely hold that TEMPR-branded convenience store franchises are part of the franchise relationship and that TEMPR may terminate the franchise relationship based on events related to a convenience store franchise, as long as it complies with the PMPA.

The Commonwealth relies on several decisions to try to support its position that convenience store will always fall outside of the scope of the PMPA. It cites to <u>Millett v. Union Oil Co. of California</u>, 24 F.3d 10 (9th Cir. 1994), but the Ninth Circuit in <u>Millet</u> concluded that the secondary agreements at issue was sufficiently integrated which caused a certain state law

governing goodwill provisions of the franchise to be deemed preempted by the PMPA. Id. at 15 ("Accordingly, we find that the Protech Agreements are sufficiently related to the Unocal motor fuel franchises to come within the meaning of the PMPA and thus the FIPA goodwill provisions are preempted").

The Ninth Circuit in Millet also found and concluded that the standard for determining whether a secondary agreement is part of a franchise relationship covered by the PMPA is "the degree of interrelation that existed between the secondary franchise and the franchises that were expressly controlled by the PMPA" Id. at 15. After applying this standard, it held that the agreement in question was a covered secondary agreement. Id. ("[W]e conclude that the Protech Agreements are sufficiently related to the Unocal motor fuel franchises so as to be covered by the PMPA."). This case cuts against the Commonwealth's position both in reasoning and outcome.[2]

This case also analyzed and contrasted other decisions cited by the Commonwealth in its MSJ. The Commonwealth reads Smith v. Atlantic Richfield Company, 533 F. Supp. 264 (E.D. Pa. 1982) as supporting its position, but the Court in Smith merely decided, based on the facts therein, that the convenience store franchise in that case was not sufficiently related to the motor fuel franchise. Unlike TEMPR's integrated franchise, the facts in Smith include that the convenience store operated by plaintiff under a separate lease. See id. at 265 ("The convenience store is adjacent to an ARCO gasoline station operated by plaintiff under a separate lease."). TEMPR's convenience store franchise is not premised on a separate lease or grant of right of possession. See Doc. No. 236-2 at ¶¶ 13-14, 134, 140, 142-144.

---

[2] Millett v. Union Oil Co. of California, 24 F.3d at 12 ("They also entered into "Protech" franchise agreements, whereby their service stations provided guaranteed service for automotive repairs. The Protech franchisees paid a monthly franchise fee and were required to meet certain equipment standards and personnel training qualifications. Both the motor fuel franchises and the Protech franchises were owned and licensed by Appellee Unocal.").

The Commonwealth also reads Aurigemma v. Arco Petroleum Products Co., 698 F. Supp. 1035 (D. Conn. 1988), with the same degree of hopeless optimism. Unlike TEMPR's integrated franchises, the facts in Aurigemma included that the convenience stores could exist without motor fuel franchises and that numerous branded convenience stores operated without the sale of motor fuel. Id. at 1041 ("In fact, a number of AM/PM stores operated without the sale of petroleum products and others were sold to competing petroleum retailers. Further, William Walker, an AM/PM Regional Sales Manager for Arco, testified that there was no business reason why an AM/PM store could not exist without a petroleum franchise."). The facts relating to TEMPR are materially different. The Commonwealth has not proffered any evidence showing that TEMPR-branded convenience stores can or do exist without motor fuel franchises.

Nevertheless, what Aurigemma does perform is the same assessment of dependence to determine whether a secondary agreement in that case was integrated to a motor fuel franchise covered by the PMPA. Id. And it does so by referencing and distinguishing its facts with those of another prior decision, **not cited by the Commonwealth**, where a federal court held that a convenience store franchise was integrated to a motor fuel franchise for purposes of the PMPA and found the state law at issue to be deemed preempted. That was the case in Atlantic Richfield Co. v. Brown, No. 85-C-5131 (N.D.Ill. Oct. 21, 1985), *available in* 1985 U.S. Dist. LEXIS 14720, where the Northern District of Illinois, Eastern Division, concluded that: "No one disputes that the PMPA applies to the premises lease and motor fuel franchise agreement. To hold that ARCO could validly terminate the lease and motor fuel franchise pursuant to its decision to withdraw from a geographic market but could not cancel its mini-market franchise for the same reason because the PMPA's coverage does not extend this far would result from an unduly narrow reading of the PMPA and would lead to incongruous consequences." Id. at *20. That is the result because, as is the case

with TEMPR's integrated franchise, "[u]nder the terms of the mini-market agreement, cancellation of the premises lease automatically terminates the mini-market franchise." Id. at *20.

TEMPR is arguing that Act 60 improperly thwarts its right to terminate a franchise relationship based on events related to a branded convenience store franchise. If a dealer fails to timely pay royalties on the convenience store,[3] for example, that will trigger a contractual cross-default causing termination of the relevant lease agreement and sales and supply agreement. The contention of the Commonwealth is that TEMPR may no longer structure its franchises in an integrated fashion pursuant to Act 60. As illustrated by Esso, the Commonwealth's argument fails inasmuch it purports that TEMPR may no longer, in compliance with the PMPA, choose not to extend an integrated franchise to a willing dealer, fail to renew a dealer unwilling to accept the terms of an integrated franchise, or terminate a franchise relationship following a dealer's material breach of the terms of the integrated convenience store franchise. Id. at 433 ("The franchisor would then be free to negotiate with a different franchisee. That franchisee could also petition DOCA for a rental rate, but then clearly would face the possibility of not receiving the franchise. Alternatively, the franchisee could choose to accept the rent requested by the franchisor, even if such rent is higher than the rate DOCA would have fixed. In no case, however, could the rental rate exceed ten percent of the market value of the filling station."). As such, in the case of Act 60 and its intention, pursuant to the interpretation made abundantly clear by the Commonwealth, it should be deemed to the preempted in the context of TEMPR's integrated franchise model.

Lastly, the Commonwealth relies in Rosedale Plaza Group, LLC v. BP West Coast Products LLC, 665 F. Supp. 2d 1118 (E.D. Cal. 2009) and Valentine v. Mobil Oil Corp., 789 F.2d 1388 (9th Cir. 1986) for the same idea that all convenience stores fall outside of the PMPA. But, what the

---

[3] Failure to timely pay amounts due to a franchisor is reasonable and material cause for termination of a franchise relationship. 15 U.S.C. § 2802(c)(8).

district court in <u>Rosedale</u> held was that is needed to examine the degree of integration between the convenience store and motor fuel franchise per the facts of in front of it. <u>Rosedale</u>, 665 F. Supp. 2d at 1132 ("Whether termination and/or nonrenewal of the motor fuel franchise because of Rosedale's refusal to execute the AM/PM agreement violates the PMPA depends upon the degree of interdependence and interrelationship between the am/pm Agreement and the Gas Agreement.") After performing the analysis, i held that the issue of dependence was one for a trier of fact, not proper for summary disposition under the facts presented by both parties in that case. Unlike here, where the Commonwealth is devoid of facts challenging TEMPR's integrated franchise model.

In <u>Valentine</u>, the Ninth Circuit held that franchisor had the right not to renew a franchise in light of a failure to agree to the terms of a redevelopment rider inserted into the franchise. This rider gave the franchisor "sole discretion to make a substantial redevelopment of the premises which may include a change in configuration and may include the elimination of the service bays." <u>Valentine</u>, 789 F.2d at 1389. The analysis employed by the court was whether the proposed changes were offered in good faith, in the normal course of business and not for the purpose of forcing the dealer out, as required under 15 U.S.C. § 2802(b)(3)(A). That is the analysis applicable to proposed changes to the terms of an integrated convenience store franchise. Act 60 aims to set aside the analysis and statutory framework required under § 2802(b)(3)(A) of the PMPA.

As a result of the above, applicable law has repeatedly sustained the following reality: (1) the PMPA may cover certain secondary agreements; and (2) what is a covered secondary agreement depends on the degree of integration or dependence to the grant of a license to sale fuel under a franchisor's trademark. Act 60 proposes a contrasting approach. Act 60 implies that all convenience stores in Puerto Rico fall outside the scope of the PMPA and may be freely regulated without regard to the PMPA's preemption provision. The Commonwealth argues that franchisors

are hand-tied when it comes to integrated convenience stores, in stark contrast to the well-settled reasoning of the First Circuit in <u>Esso</u>, <u>supra</u>. Act 60 may even create causes of action for dealers to challenge a termination or nonrenewal that may otherwise be valid under the PMPA. This is why Sections 2 and 3 of Act 60 are illegal under the U.S. Supremacy Clause, as applied to TEMPR's integrated franchise model.

Act 60 and its newly created cause of action infringe and detracts long-standing federal policy carefully created to ensure the right balance between affording franchisors with adequate flexibility to respond to changing market conditions and dealers with adequate protection from arbitrary terminations and nonrenewal. However, Act 60 now affords Puerto Rico dealers a cause of action for wrongful termination against a franchisor like TEMPR for a termination or nonrenewal of a franchise relationship that is otherwise valid under the PMPA, if the termination or nonrenewal is based on failures related to provisions of an integrated convenience store franchise. The Commonwealth's contradictory proposition – that Act 60 both *adds* convenience store to the definition of a gasoline service station for substantive regulation but *keeps* them as "separate" or "different" businesses for termination or nonrenewal purposes – is the type of self-serving self-contradiction frowned upon by long-standing judicial doctrines. <u>See, e.g.</u>, <u>Patriot Cinemas, Inc. v. General Cinema Corp.</u>, 834 F.2d 208, 212 (1st Cir. 1987) (holding that a litigant is "playing fast and loose with the courts when intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.") TEMPR respectfully submits that this contradictory conduct should be energetically rejected.

**RESPECTFULLY SUBMITTED**.

[*Signature Page Follows*]

**CERTIFICATE OF SERVICE**: We hereby certify that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record in this case. It is also certified that the foregoing complies with the 15-page limit applicable to memoranda in opposition, as required under L. Civ. R. 7, excluding its cover and signature pages.

Dated: August 30, 2024                    Respectfully submitted,

**SEPULVADO, MALDONADO & COURET**
AON Center, Suite 990
304 Ponce de León Avenue
San Juan, Puerto Rico 00918
Tel.: (787) 765-5656
Fax: (787) 294-0073

*s/ Lee R. Sepulvado Ramos*
**Lee R. Sepulvado Ramos**
Bar No. 211912
lsepulvado@smclawpr.com

*s/ Gerardo J. Cruz Ortiz*
**Gerardo J. Cruz Ortiz**
Bar No. 307011
gcruz@scmlawpr.com

*Attorneys for TotalEnergies Mktg. Puerto Rico Corp.*

16